IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH JOHNSON, | :: | PRISONER HABEAS CORPUS |
| Petitioner, | :: | 28 U.S.C. § 2254 |
| | :: | |
| v. | :: | |
| | :: | |
| DONALD BARROW, Warden, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:12-CV-3775-WSD-GGB |

**<u>FINAL REPORT AND RECOMMENDATION</u>**

Petitioner is confined at Washington State Prison in Davisboro, Georgia.

Petitioner, pro se, challenges under 28 U.S.C. § 2254 his judgment of conviction

entered in Fulton County, Georgia.  (Doc. 1.)

The Court denied Respondent's motion to dismiss the petition as untimely.

(Doc. 12.)  Respondent then filed a response to the merits of Petitioner's claims,

(Doc. 14), and Petitioner filed a reply, (Doc. 15).  For the reasons discussed below,

I recommend that the petition and a certificate of appealability be denied.

**I.    Background**

On February 1, 2000, Petitioner

pleaded guilty to the felony murder and armed robbery of Prem
Sharma and was sentenced to life imprisonment. He appeal[ed] the
trial court's denial of his motion to withdraw his guilty plea,
contending that he was coerced into making his plea and his trial

counsel was ineffective in misinforming him about the law on recidivism.

*Johnson v. State*, 570 S.E.2d 289, 290 (Ga. 2002). The Georgia Supreme Court affirmed Petitioner's judgment of conviction, finding that Petitioner "made a voluntary and intelligent choice to plead guilty and trial counsel's performance did not affect the outcome of the plea process." *Id.*

Because the plea hearing is central to Petitioner's claims in this case, I set out below the relevant portion of the transcript of that hearing:

> BY MS. FINLEY [the prosecutor]:
> Q.   MR. JOHNSON, COULD YOU STATE YOUR TRUE,
>       CORRECT, LEGAL NAME FOR THE RECORD, PLEASE.
> A.   JOSEPH JOHNSON, JUNIOR.
> Q.   IF YOU COULD SPEAK UP SO THE COURT REPORTER
>       CAN HEAR YOU.
> A.   JOSEPH JOHNSON, JUNIOR.
> Q.   WHAT'S YOUR DATE OF BIRTH?
> A.   5/4/74.
> Q.   HOW OLD ARE YOU?
> A.   TWENTY-SIX.
> Q.   ARE YOU ABLE TO READ AND WRITE THE ENGLISH
>       LANGUAGE?
> A.   YES, SIR. YES, MA'AM.
> Q.   CAN YOU HEAR MY QUESTIONS AND DO YOU
>       UNDERSTAND MY QUESTIONS?
> A.   YES, MA'AM.
> Q.   MR. JOHNSON, YOU ARE CHARGED – ARE YOU UNDER
>       THE INFLUENCE OF ANY DRUGS OR ALCOHOL OR
>       ANY OTHER MEDICATION TODAY?

2

A.    NO, MA'AM.

Q.    YOU ARE CHARGED IN INDICTMENT NUMBER Y-24507
      WITH TEN COUNTS. I'M GOING TO GO THROUGH
      THEM ONE BY ONE SO YOU UNDERSTAND WHAT
      YOU'RE CHARGED WITH.
      COUNT I YOU'RE CHARGED WITH MALICE MURDER.
      THAT'S A FELONY WHICH CARRIES A MINIMUM
      PENALTY OF LIFE IN PRISON, DO YOU UNDERSTAND
      THAT?

A.    YES, MA'AM.

Q.    COUNTS II AND III YOU ARE CHARGED WITH TWO
      COUNTS OF FELONY MURDER. THOSE ARE BOTH
      FELONIES WHICH CARRY A MINIMUM MANDATORY
      LIFE IN PRISON, DO YOU UNDERSTAND THAT?

A.    YES, MA'AM.

Q.    COUNTS IV AND V YOU'RE CHARGED WITH ARMED
      ROBBERY. THOSE ARE BOTH FELONIES WHICH CARRY
      A MINIMUM MANDATORY OF TEN YEARS IN PRISON
      AND A MAXIMUM OF LIFE IN PRISON, DO YOU
      UNDERSTAND THAT?

A.    YES, MA'AM.

Q.    COUNT VI YOU'RE CHARGED WITH KIDNAPPING,
      WITH BODILY INJURY. THAT IS A FELONY WHICH
      CARRIES A MINIMUM MANDATORY LIFE IN PRISON,
      DO YOU KNOW THAT?

A.    YES, MA'AM.

Q.    COUNT VII YOU'RE CHARGED WITH AGGRAVATED
      ASSAULT. THAT'S A FELONY WHICH CARRIES A
      PENALTY OF BETWEEN ONE TO 20 YEARS IN PRISON,
      DO YOU UNDERSTAND THAT?

A.    YES, MA'AM.

Q.    COUNT VIII YOU'RE CHARGED WITH KIDNAPPING.
      THAT IS A FELONY WHICH CARRIES A PENALTY
      BETWEEN TEN AND 20 YEARS IN PRISON, DO YOU
      UNDERSTAND THAT?

3

A.     YES, MA'AM.

Q.     COUNT IX YOU'RE CHARGED WITH POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY. THAT'S A FELONY WHICH CARRIES A PENALTY OF FIVE YEARS TO RUN CONSECUTIVE TO ANYTHING THAT YOU MAY HAVE BEEN CONVICTED OF, DO YOU UNDERSTAND THAT?

A.     YES, MA'AM.

Q.     AND IN COUNT X YOU'RE CHARGED WITH POSSESSION OF A FIREARM BY A CONVICTED FELON. THAT'S ALSO A FELONY WHICH CARRIES A MAXIMUM PENALTY UP TO FIVE YEARS IN PRSION [sic], DO YOU UNDERSTAND THAT?

A.     YES, MA'AM.

Q.     SO IF YOU WERE TO GO TO TRIAL AND BE FOUND GUILTY BY A JURY, YOU WILL BE LOOKING AT THREE LIFE SENTENCES PLUS 20 PLUS FIVE PLUS FIVE. YOU UNDERSTAND YOUR EXPOSURE?

A.     YES, MA'AM.

Q.     DO YOU UNDERSTAND, MR. JOHNSON, THAT IS THE STATE'S RECOMMENDATION? IF YOU WERE TO PLEAD GUILTY TODAY THAT YOU ENTER A PLEA TO COUNT II OF THE INDICTMENT, WHICH IS FELONY MURDER, ARMED ROBBERY BEING THE UNDERLYING FELONY, AND COUNT IV OF THE INDICTMENT, WHICH IS ARMED ROBBERY, THEY WOULD MERGE TOGETHER, COUNT IV WOULD MERGE INTO COUNT II, AND THE STATE WOULD RECOMMEND THAT YOU BE SENTENCED TO LIFE IN PRISON, DO YOU UNDERSTAND THAT?

A.     YES, MA'AM.

Q.     DO YOU UNDERSTAND, HOWEVER, THAT HIS HONOR IS NOT BOUND BY MY RECOMMENDATION AND COULD SENTENCE YOU TO THE MAXIMUM IF HE WISHED TO DO SO?

4

A.    YES, MA'AM.

Q.    DO YOU ALSO UNDERSTAND –
      (WHEREUPON, THERE WAS DISCUSSION OFF THE
      RECORD.)
      MR. GUICHARD [Petitioner's counsel]: SORRY, JUST
      WANTED TO EXPLAIN SOMETHING TO MR. JOHNSON.

BY MS. FINLEY:

Q.    DO YOU ALSO UNDERSTAND THAT THE STATE HAD
      PREVIOUSLY FILED A RECIDIVIST NOTICE, AND THAT
      WE WOULD WITHDRAW THAT NOTICE AT THIS TIME?

A.    YES, MA'AM.

Q.    DO YOU UNDERSTAND, MR. JOHNSON, IF YOU WERE
      TO ENTER A PLEA OF GUILTY TODAY YOU WOULD BE
      WAIVING THE FOLLOWING RIGHTS: THE RIGHT TO
      HAVE A TRIAL BY JURY, THE RIGHT TO
      CROSS-EXAMINE THE STATE'S WITNESSES CALLED
      TO TESTIFY AGAINST YOU, THE RIGHT TO PRESENT
      WITNESSES AND EVIDENCE ON YOUR OWN BEHALF,
      AND THE RIGHT TO TESTIFY ON YOUR OWN BEHALF
      IF YOU WISH TO TESTIFY, DO YOU UNDERSTAND
      THAT?

A.    YES, MA'AM.

Q.    FURTHERMORE, IF YOU WERE FOUND GUILTY, YOU'D
      HAVE THE RIGHT TO APPEAL THAT VERDICT, AND
      YOU ARE WAIVING THESE RIGHTS BY ENTERING A
      PLEA OF GUILTY TODAY, DO YOU UNDERSTAND
      THAT?

A.    YES, MA'AM.

Q.    WITH THOSE RIGHTS IN MIND THEN, SIR, HOW DO
      YOU WISH TO PLEAD TO COUNT II OF THE
      INDICTMENT, GUILTY OR NOT GUILTY?

A.    GUILTY.

Q.    AND COUNT IV OF THE INDICTMENT, ARMED
      ROBBERY, HOW DO YOU WISH TO PLEAD, GUILTY OR
      NOT GUILTY?
A.    GUILTY.
Q.    IF YOU COULD PLEASE SIGN THE INDICTMENT WITH
      YOUR ATTORNEY INDICATING A PLEA.
      MR. GUICHARD: YOUR HONOR, THE INDICTMENT HAS
      BEEN SIGNED.

BY MS. FINLEY:
Q.    MR. JOHNSON, IS THIS YOUR SIGNATURE ON Y-24507?
A.    YES.
      MS. FINLEY: YOUR HONOR, I'M TENDERING THE
      INDICTMENT SIGNED BY ME, DEFENSE COUNSEL, AND
      THE DEFENDANT TO THE COURT.

BY MS. FINLEY:
Q.    MR. JOHNSON, ALSO PURSUANT TO YOUR PLEA IN
      COUNTS II AND IV, THE STATE WOULD MOVE TO
      DEAD DOCKET COUNTS I, III AND V THROUGH X ON
      THE INDICTMENT. DO YOU UNDERSTAND THAT?
A.    YES, MA'AM.
Q.    MR. JOHNSON, HAS ANYONE FORCED YOU OR
      THREATENED YOU OR COERCED YOU IN ANY WAY TO
      PLEAD GUILTY TODAY?
A.    NO, MA'AM.
Q.    HAS ANYONE PROMISED YOU ANYTHING IN
      EXCHANGE FOR YOUR PLEA OF GUILTY TODAY?
A.    NO, MA'AM.
      MR. GUICHARD: OTHER THAN THE SENTENCE WE
      TALKED ABOUT?
      THE DEFENDANT: NO.

BY MS. FINLEY:

6

> Q. OTHER THAN THE SENTENCE RECOMMENDED BY THE STATE, NO ONE HAS PROMISED YOU ANYTHING?
> A. NO, MA'AM.
> Q. ARE YOU ENTERING THIS PLEA FREELY AND VOLUNTARILY?
> A. YES, MA'AM.
> Q. HAVE YOU UNDERSTOOD ALL OF MY QUESTIONS AND GIVEN TRUTHFUL ANSWERS?
> A. YES, MA'AM.

(Doc. 9-9 at 102-07.)  The prosecutor then described for the court the evidence the State would present at trial to prove Petitioner's guilt, and Petitioner's counsel urged the court to accept the plea deal.  (*Id.* at 107-10.)  Petitioner then made the following statement: "I just would like to say to the son to Mr. Sharmm, that I apologize. I'm sorry. My prayers are with the family. That's all."  (*Id.* at 110.)  The court then accepted the plea, adjudicated Petitioner guilty, and sentenced him to life imprisonment.  (*Id.* at 110-11.)

On direct appeal, the Georgia Supreme Court reviewed the trial court's record, including the transcript of the plea hearing.  *See Johnson*, 570 S.E.2d at 291. The appellate court described the law governing Petitioner's claim that his guilty plea was invalid as follows:

> To establish that a guilty plea is valid, the record must show that the defendant understood and intelligently entered the plea. The trial court must determine that the plea is voluntary, the defendant understands

7

the nature of the charges, and there is a factual basis for the plea. In addition, the trial court must inform the defendant of the rights being waived, the terms of any negotiated plea, and the minimum and maximum possible sentences.

*Id.* (footnotes omitted).

The Georgia Supreme Court found from the record that Petitioner knowingly and voluntarily pled guilty: "Because the record shows that [Petitioner] was correctly informed about the constitutional rights he was waiving and the possible sentences against him and he was not coerced into pleading guilty, we conclude that he made a knowing, voluntary, and intelligent plea of guilty." *Id.* The appellate court also rejected Petitioner's ineffective assistance claim that his lawyer failed to adequately explain the law on recidivism. *Id.*

Attorney Gary Guichard represented Petitioner at his plea and sentencing hearing. (Doc. 1 at 6.) Attorney John Kraus represented Petitioner in connection with his motion to withdraw his plea and on direct appeal.[1] (*Id.*; Doc. 9-9 at 133-45; Doc. 9-10.)

_____

[1] At the initial hearing on Petitioner's motion to withdraw his plea, which was March 13, 2000, Petitioner proceeded pro se. (Doc. 9-9 at 113-32.) The trial court decided during that hearing to appoint counsel for Petitioner and conduct another hearing. (*Id.*) Kraus represented Petitioner at the second hearing, which was September 24, 2001, and then on direct appeal. (*Id.* at 27-38, 133.)

In 2003, Petitioner filed a petition for a writ of habeas corpus in the Superior Court of Macon County, Georgia.  (Doc. 9-2.)  Petitioner claimed in his state petition that Kraus rendered ineffective assistance by failing to challenge the guilty plea on two grounds.  (*Id.* at 5-23.)  Those grounds were, one, that Petitioner was not advised of eight fundamental rights during his plea hearing and, two, that he was subjected to double jeopardy because the armed robbery to which he pled guilty was a lesser included offense of the felony murder to which he also pled guilty.  (*Id.*)

In 2004, the state habeas court held an evidentiary hearing.  (Doc. 9-9 at 1-18.)  In 2007, Petitioner amended his state habeas petition to add a third claim of ineffectiveness by Kraus.  (Docs. 9-3, 9-4.)  That claim was that Kraus should have argued that Petitioner was not informed at the plea hearing of all three federal constitutional rights mentioned in *Boykin v. Alabama*, 395 U.S. 238 (1969) and of his rights under Georgia law.  (*Id.*)  As for the federal constitutional rights mentioned in *Boykin*, Petitioner claimed that he was not told of his right not to incriminate himself at any trial.  (*Id.*)

In 2009, the state habeas court issued its final order denying Petitioner relief.  (Doc. 9-6).  The state habeas court specifically addressed only the two claims in

9

Petitioner's original petition and did not mention the third claim in the amended petition.  (*Id.*)  The state habeas court nevertheless concluded that Kraus did not render ineffective assistance under the governing standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  (*Id.*); *see infra* Part II.C.  The Georgia Supreme Court denied Petitioner a certificate of probable cause to appeal that ruling. (Doc. 9-8.)

Petitioner asserts the following grounds for relief in his federal habeas petition:

1.   his guilty plea is invalid because he was not informed of his right not to incriminate himself and he did not understand the consequences of the plea;

2.   Guichard rendered ineffective assistance by allowing Petitioner to plead guilty without being advised of his right not to incriminate himself; and

3.   Kraus rendered ineffective assistance by not arguing on appeal that Petitioner's plea was invalid because he was not informed of his right not to incriminate himself;

(Doc. 1 at 4-5; Doc. 15.)  Respondent contends that the Georgia Supreme Court's decision on ground one is entitled to deference and that Petitioner procedurally defaulted grounds two and three.  (Doc. 14.)

10

## II.     Applicable Legal Standards

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus for a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). This power, however, is limited.

### A.     Review Under 28 U.S.C. § 2254

A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 131 S. Ct. at 1398 (citations and quotation marks omitted).

In applying 28 U.S.C. § 2254(d), a federal habeas court first determines the "clearly established federal law" based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."

11

*Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The federal habeas court then determines whether the state court decision is "contrary to" that clearly established federal law, i.e., whether the state court "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or "confronts a set of facts that are materially indistinguishable" from a Supreme Court decision "and nevertheless arrives at a [different] result." *Id.* at 405-06.

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it then determines whether the decision is an "unreasonable application" of that law, i.e., whether "the state court identifies the correct governing legal principle" from the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* at 409, 411; *see Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) ("For purposes of § 2254(d)(1), an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." (quotations omitted)).  In short, when a state court applies clearly established federal law to a

12

claim, federal habeas relief is not available unless the petitioner shows that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

> B. <u>Procedural Default</u>

Federal habeas review is generally barred for a claim that was procedurally defaulted in state court. For example,

> if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

*Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999) (citations omitted). Under Georgia law, a ground for relief that is not raised on direct appeal generally cannot be asserted later in a state habeas petition unless the petitioner shows cause and prejudice for the failure to raise the issue on direct appeal. *Head v. Ferrell*, 554 S.E.2d 155, 160 (Ga. 2001); *Gaither v. Gibby*, 475 S.E.2d 603, 604 (Ga. 1996) ("[A]ny issue that could have been raised [on direct] appeal but was not, is procedurally barred from consideration in [state] habeas corpus proceedings absent a showing of adequate cause for the failure to raise it earlier and a showing of actual

13

prejudice." (citation omitted)).  Absent such a showing, a ground not raised on direct appeal is procedurally defaulted and thus barred from review by a federal court.  *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Bailey*, 172 F.3d at 1303.

This bar to federal habeas review may be lifted if the petitioner can demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law; or (2) a fundamental miscarriage of justice, *i.e.,* the continued incarceration of someone who is actually innocent, arising from the federal court's failure to consider the defaulted claim.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488-89, 495-96 (1986).

To establish cause, a petitioner must show either that his counsel's assistance was so ineffective that it violated his Sixth Amendment right to counsel or "that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule."  *Murray*, 477 U.S. at 488.  To establish prejudice, "a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different" had he presented his defaulted claim.  *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted).  Finally, to prevail on a claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence . . . that was not

14

presented at trial," thereby showing "that it is more likely than not that no reasonable juror would have convicted him" had the new evidence been presented. *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

C.      Ineffective Assistance Of Counsel

The standard for evaluating ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The analysis is two-pronged, but a court need not address both prongs "if the [petitioner] makes an insufficient showing on one."  *Id.* at 697.

The petitioner must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.* at 690.  A court must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689; *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . .").  Counsel is not incompetent so long as the particular approach taken could be considered sound strategy, *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), and "a petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden,"

15

*Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc).  That burden is to show that "no competent counsel would have taken the action that his counsel did take" or would have failed to take the action his counsel did not take. *Chandler*, 218 F.3d at 1315.

Under *Strickland*'s second prong, a petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him.  *Strickland*, 466 U.S. at 694.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id.* at 691.  A petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

When the deferential *Strickland* standard is "combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether 'there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'"  *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) (citing *Harrington*, 131 S. Ct. at 788).  "Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an

16

ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Id.* at 911.

## III.   Analysis

As explained below, I find that Petitioner has not overcome the deference owed the state courts' decisions on grounds one and three and that Petitioner procedurally defaulted ground two by not raising it on direct appeal.  The petition thus should be denied.

### A.   Ground One

Petitioner contends that he did not knowingly and voluntarily plead guilty because he was not informed of the privilege against self-incrimination and he did not understand the consequences of the plea.  Petitioner argues that *Boykin* required that he be told of the privilege against self-incrimination in order for his plea to be knowing and voluntary.  Petitioner presented this claim on direct appeal and cited *Boykin*, although he did not specifically mention the privilege against self-incrimination.  (Doc. 9-9 at 27-38.)

The U.S. Supreme Court was confronted in *Boykin* with a guilty plea entered at a hearing where "the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." *Boykin*, 395 U.S. at 239.  The Supreme

17

Court held "[i]t was error . . . for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Id.* at 242. Because the "silent record" in *Boykin* did not "disclose that the defendant voluntarily and understandingly entered his pleas of guilty," the plea was constitutionally invalid. *Id.* at 242-44.

The Supreme Court concluded that the record must affirmatively show that a defendant knowingly and voluntarily pled guilty largely because "[s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered." *Id.* at 243. The Supreme Court listed three such "important federal rights": the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers. *Id.* "We cannot presume a waiver of these three important federal rights from a silent record." *Id.*

Because the Georgia Supreme Court adjudicated the merits of Petitioner's claim that he did not knowingly and voluntarily plead guilty, the question for this Court is whether the state appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *supra* Part II.A. The first task is to determine the "clearly established federal law" based on "the holdings, as

18

opposed to the dicta, of [the U.S. Supreme Court's] decisions as of the time of the relevant state-court decision," which in this case was 2002. *See Williams*, 529 U.S. at 412.

As noted above, "*Boykin* held that for a guilty plea to be valid and enforceable, '[t]he record must show, or there must be an allegation and evidence which shows, that an accused . . . intelligently and understandingly' waived the rights implicated by a guilty plea." *Allen v. Thomas*, 161 F.3d 667, 670 (11th Cir. 1998) (quoting *Boykin*). *Boykin* did not hold that a defendant must be specifically informed of the three rights mentioned in *Boykin* for a guilty plea to be valid. "This Circuit . . . has construed *Boykin* to require only that courts establish a record that generally reveals affirmative awareness of the consequences of a guilty plea." *United States v. Simmons*, 961 F.2d 183, 187 (11th Cir. 1992) (citation and quotation marks omitted). "[T]here is no requirement that there be express articulation and waiver of the three constitutional rights referred to in *Boykin*, by the defendant at the time of acceptance of his guilty plea, if it appears from the record that the accused's plea was intelligently and voluntarily made, with knowledge of its consequences." *McChesney v. Henderson*, 482 F.2d 1101, 1110 (5th Cir. 1973) (rejecting § 2254's petitioner's *Boykin* claim); *see Van Poyck v.*

19

*Wainwright*, 595 F.2d 1083, 1085-86 (5th Cir. 1979) ("We have repeatedly held, however, that *Boykin* does not mandate any strict rule of criminal procedure and that a failure to advise a defendant of the right to trial by jury, right of confrontation, and right against self-incrimination does not in itself render the plea involuntary.") (rejecting § 2254's petitioner's *Boykin* claim).[2]

In deciding Petitioner's direct appeal, the Georgia Supreme Court applied the clearly established federal law described above because it reviewed whether Petitioner "understood and intelligently entered the plea" voluntarily and with knowledge of the consequences. *Johnson*, 570 S.E.2d at 291. The Georgia Supreme Court's decision thus was not contrary to clearly established federal law.

Nor was the Georgia Supreme Court's decision an unreasonable application of clearly established federal law. In reviewing the record, the state appellate court found:

> that the State presented the factual basis for [Petitioner's] plea and his knowing and voluntary entry of the plea . . . The State established that [Petitioner] was not under the influence of alcohol or drugs, understood the charges and possible sentences, and understood the

---

[2] In *Bonner v. Prichard*, 661 F.2d 1206, 1209-10 (11th Cir. 1981) (en banc), the U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions rendered by the former Fifth Circuit appellate court prior to October 1, 1981.

20

> rights that he would be waiving by pleading guilty, including his right
> to have a trial by jury. . . . [and] In response to more questions,
> [Petitioner] said that he had entered his plea voluntarily and had not
> been forced, threatened, or coerced into pleading guilty."

*Id.* Based on that review of the record, the Georgia Supreme Court concluded that

Petitioner "made a knowing, voluntary, and intelligent plea of guilty." *Id.*

Upon review of the transcript of Petitioner's plea hearing – the relevant

portion of which is reproduced verbatim in Part I above – I am convinced that the

Georgia Supreme Court reasonably applied clearly established federal law in

concluding that Petitioner knowingly and voluntarily pled guilty with awareness of

the consequences.  Petitioner was informed of all ten charges against him, including

the nature of each charge, the maximum sentence for each charge, and the

maximum sentence for all the charges collectively.  (Doc. 9-9 at 102-07.)  He was

informed of his right to a jury trial and his right to confront and cross-examine his

accusers at trial – two of the rights mentioned in *Boykin* – and was told that he had

the "right to testify on your own behalf if you wish to testify."  (Doc. 9-9 at 105.)

Although Petitioner was not expressly told that he had a right not to incriminate

himself, the quoted statement certainly implied that he had that right.  Petitioner

was informed that the State would drop eight of the charges and withdraw its

21

recidivist notice only if he pled guilty to two of the charges and waived his right to a jury trial. Finally, he was informed that if he pled guilty he would be sentenced to a minimum of life imprisonment and that the court could add additional years to the life sentence. Petitioner repeatedly stated his understanding of all that information and unequivocally agreed to plead guilty after receiving the information. (*Id.*)

The record before the Georgia Supreme Court also included the trial court's hearings on Petitioner's motion to withdraw his guilty plea. (Doc. 9-9 at 133-45; Doc. 9-10.) Petitioner testified at the final hearing that he wanted to withdraw his plea because bringing him into the courtroom for his co-defendant's sentencing coerced him into pleading guilty, Guichard did not adequately advise him of the law on recidivism, and Guichard did not adequately advise him about the use of incriminating statements at any trial. (Doc. 9-9 at 135-40.) Kraus then asked Petitioner if there was any other basis for his motion to withdraw his plea. (*Id.* at 141.) Petitioner responded "no, not really . . . I think we've covered everything." (*Id.*)

Petitioner thus did not complain, in the post-plea proceedings, of the failure to advise him at the plea hearing of the privilege against self-incrimination. Yet Petitioner testified that he learned after the plea hearing about the use of statements

22

at trial, particularly that "they could use my co-defendant's statement against me." (*Id.* at 139-40.)  That testimony suggests that Petitioner learned after he pled guilty, but before the final hearing on his motion to withdraw his plea, that his own statements could not have been used against him at any trial.  But Petitioner did not mention in his testimony the failure to advise him of the privilege against self-incrimination.  The record of post-plea proceedings provides additional support for the Georgia Supreme Court's rejection of Petitioner's challenge to his plea.

In short, the Georgia Supreme Court reasonably concluded from the record that Petitioner's plea was knowing and voluntary and that he understood the consequences of his plea, even though he was not told of the privilege against self-incrimination.  *See Simmons*, 961 F.2d at 187 ("[A] trial court may sufficiently apprise a defendant of the consequences of his plea without obtaining express waivers of his right to confront adverse witnesses and his right against compulsory self-incrimination."); *Carver v. Wharton*, 532 F. Supp. 512, 517 (S.D. Ga. 1982) ("Although there is no indication in Judge Smith's affidavit that he specifically mentioned petitioner's privilege against self-incrimination, such express articulation was not required in light of the overall evidence that petitioner's guilty plea was made 'intelligently and voluntarily, with knowledge of its

23

consequences.'") (denying relief under § 2254).  Petitioner has not overcome the deference owed the Georgia Supreme Court's decision on ground one.

B.    Ground Two

Petitioner contends in ground two that Guichard was ineffective for allowing him to plead guilty without being informed of the privilege against self-incrimination.  Petitioner could have raised that claim on direct appeal because he had new counsel, Kraus, at that time.  Petitioner did not raise the claim on direct appeal or in his state habeas case.

Petitioner did contend on direct appeal that Guichard was ineffective, but not because he allowed Petitioner to plead guilty without being informed of the privilege against self-incrimination.  (Doc. 9-9 at 27-38 (Petitioner's appellate brief)); *Johnson*, 570 S.E.2d at 291.  Petitioner instead claimed Guichard was ineffective for failing to "adequately explain the law to [Petitioner], especially the law concerning recidivism, and because [Guichard] . . . did not want to go to trial." (Doc. 9-9 at 36); *Johnson*, 570 S.E.2d at 291 ("[Petitioner] contends that he received ineffective assistance of counsel due to his trial counsel's failure to adequately explain the law on recidivism.").

24

Petitioner thus did not present to the Georgia Supreme Court the ineffective assistance claim he asserts in ground two and did not afford that court an opportunity to address the claim. It was not sufficient for exhaustion purposes to raise on direct appeal a general allegation of ineffective assistance. *See Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1353-54 (11th Cir. 2012). Petitioner had to raise a specific allegation that was at least related to the specific allegation he now asserts – that Guichard failed to ensure Petitioner was informed of one of the federal constitutional rights mentioned in *Boykin*. *See id.* But the only specific allegation of ineffectiveness Petitioner raised on direct appeal was that Guichard failed to adequately explain Georgia's recidivism law. Because those ineffectiveness claims are unrelated, Petitioner did not "fairly present[]" his claim in ground two to the Georgia Supreme Court on direct appeal, i.e., he did not exhaust the claim before asserting it in his federal habeas petition. *See id.*

The unexhausted claim is defaulted because Petitioner cannot now raise it in state court. *See Head*, 554 S.E.2d at 160 (claims not raised on direct appeal cannot be raised in state habeas proceedings absent a showing of cause and prejudice); *see also* O.C.G.A. § 9-14-51 (requiring all grounds for habeas relief to be raised in the original or amended petition). Petitioner has shown no basis to overcome the bar to

25

this Court's review of the defaulted claim.  *See supra* Part II.B.  Indeed, Petitioner

did not even respond to Respondent's argument that ground two is procedurally

defaulted.  (Doc. 15.)

C.     Ground Three

Petitioner contends in ground three that Kraus rendered ineffective assistance

by not raising on appeal, or in the motion to withdraw the plea, the failure to inform

Petitioner at the plea hearing of the privilege against self-incrimination.

Respondent contends that claim is procedurally defaulted because Petitioner did not

raise it in the state courts.  I disagree because Petitioner raised the claim in the

amendment to his state habeas petition, which he filed in 2007 before the state

habeas court issued its decision.  (Docs. 9-3, 9-4.)  Although the state habeas court

did not discuss that claim in its final order, this Court must presume that the state

habeas court adjudicated the claim on the merits.  *See Johnson v. Williams*, 133 S.

Ct. 1088, 1091-92 (2013) (holding that when a "state court addresses some of the

claims raised by a defendant but not a claim that is later raised in a federal habeas

proceeding," the latter claim "must be presumed to have been adjudicated on the

merits by the [state] courts" unless the presumption is adequately rebutted).  Neither

26

party has presented anything to rebut that presumption.  The state habeas court's decision is thus entitled to deference under § 2254(d).  *See id.*

As noted in Part II.C above, *Strickland* governs Petitioner's claim that Kraus rendered ineffective assistance.  The state habeas court applied *Strickland* to Petitioner's ineffective assistance claims.  (Doc. 9-6 at 7-10.)  Petitioner thus has not shown that the state habeas court failed to apply clearly established federal law.

Petitioner also has not shown that the state habeas court's application of *Strickland* was objectively unreasonable.  Petitioner must "surmount a particularly high bar" here, as he must "overcome the doubly deferential standard applied to the decisions of counsel in habeas corpus review."  *See Harris v. Sec'y, Fla. Dep't of Corr.*, No. 13-11318, 2014 WL 945125, at *4 (11th Cir. Mar. 12, 2014) (alterations and quotation marks omitted).  If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," Petitioner cannot obtain federal habeas relief.  *See Harrington*, 131 S. Ct. at 788.

There is a reasonable argument that Kraus satisfied *Strickland*'s deferential standard by not claiming that the failure to inform Petitioner of the privilege against self-incrimination rendered his plea invalid.  Kraus represented Petitioner at the hearing on his motion for new trial in 2001 and filed his appellate brief with the

27

Georgia Supreme Court in July 2001.  (Doc. 9-9 at 27-38, 133.)  At that time, federal law was clear that the failure to advise a defendant of the privilege against self-incrimination, standing alone, does not render a guilty plea invalid.  *See supra* Part III.A; *Williams v. Head*, 185 F.3d 1223, 1238 (11th Cir. 1999) ("[T]he inquiry is focused on reasonableness given the circumstances counsel faced at the time.").

Georgia law suggested the same thing at the time, though perhaps not as clearly.  Petitioner argues that his claim would have succeeded before the Georgia Supreme Court had Kraus raised it.  (Doc. 15 at 6-9.)

In 1982, the Georgia Supreme Court unanimously held: "We decline to adopt a rule which would demand that failure to advise an accused of his right against self-incrimination invalidates a guilty plea in a case where the record reflects that the central considerations of *Boykin* have otherwise been met."  *Goodman v. Davis*, 287 S.E.2d 26, 29 (Ga. 1982).  The defendant in *Goodman* asserted the same claim Petitioner says Kraus should have asserted – that his guilty plea was invalid because he was not told of his right not to incriminate himself.  *Id.* at 27.  The Georgia Supreme Court rejected the claim because:

> We do not read *Boykin* as requiring the invalidation of a voluntarily made guilty plea where the record clearly reflects that the accused fully understands the nature of the charges against him and the

28

consequences of entering a guilty plea, but the court fails to specifically advise him that he has a right to remain silent prior to accepting the guilty plea. Rather, we read *Boykin* as requiring that there be a record of the guilty plea hearing adequate for the reviewing court to determine whether (1) the defendant has freely and voluntarily entered the plea with (2) an understanding of the nature of the charges against him and (3) an understanding of the consequences of his plea.

*Id.* at 28.  "*Goodman* remains on the books, having never been overruled or disapproved."  *Tyner v. State*, 714 S.E.2d 577, 580 (Ga. 2011).

If Kraus had argued in 2001 that Petitioner's guilty plea was invalid because of the failure to inform him of the privilege against self-incrimination, the almost twenty-year-old precedent in *Goodman* would have severely undermined, if not torpedoed, the claim.  Kraus also would have been faced with a statement by the Georgia Supreme Court in another unanimous decision issued just two months before he filed Petitioner's appellate brief.  In that decision, the Georgia Supreme Court noted in dicta that it did not adopt in a prior case "Louisiana's requirement, if any, that a guilty plea must be made 'with an articulated waiver of the three *Boykin* rights.'"  *Motley v. State*, 546 S.E.2d 468, 469 n.3 (Ga. 2001).  Based on those decisions, it was reasonable for Kraus not to challenge Petitioner's guilty plea on the basis that Petitioner was not informed of one of the three rights mentioned in *Boykin*.  More to the point, there certainly is a "reasonable argument that [Kraus]

29

satisfied *Strickland*'s deferential standard" by not raising the claim.  *See Harrington*, 131 S. Ct. at 788.

Petitioner cites a 1996 decision from the Georgia Supreme Court, in which a guilty plea was invalidated where the petitioner "was not advised of his . . . right to confront witnesses and [the] privilege against self-incrimination."  *See Bowers v. Moore*, 471 S.E.2d 869, 872 (Ga. 1996).  While *Bowers* may have supported the claim Petitioner says Kraus should have raised in 2001, it was not on all fours with the facts of Petitioner's case, unlike *Goodman*.  The petitioner in *Bowers* was not told of two of the three rights mentioned in *Boykin*, while Petitioner and the defendant in *Goodman* were not told of only one.  *See id.* at 872; *Goodman*, 287 S.E.2d at 27.  The petitioner in *Bowers* also claimed that his plea was invalid because he was mentally retarded, a fact that "fortifie[d]" the state courts' conclusion that the plea was invalid.  *Bowers*, 471 S.E.2d at 872.  The existence of *Bowers* at the time Kraus represented Petitioner does not establish that Kraus was ineffective for not raising Petitioner's *Boykin* claim.

To be sure, the current law in Georgia, as stated by the Georgia Supreme Court in 2011, is that "any defendant who pleads guilty will be able to secure a reversal of his conviction if the record does not show that he was specifically

30

advised of each of the 'three *Boykin* rights' and he properly presents the issue to a reviewing court." *Tyner*, 714 S.E. 2d at 580.  According to *Tyner*, that became the law in Georgia pursuant to the Georgia Supreme Court's decision in *Wilson v. Kemp*, 707 S.E.2d 336 (Ga. 2011).  *Id.*  The Georgia Supreme Court noted that "[i]t is not entirely clear how this Court got from *Goodman* [in 1982] to *Wilson* [in 2011]" and acknowledged its earlier decisions that appear to conflict with *Goodman*, including a decision issued after Kraus filed Petitioner's appellate brief and before the Georgia Supreme Court decided Petitioner's appeal.  *Id.* at 580 & n.2 (citing *Britt v. Smith*, 556 S.E.2d 435 (Ga. 2001), which issued in November 2001).[3]  But the court also acknowledged that *Goodman* was valid precedent until at least 2011 and has never been overruled or disapproved.  *Id.* at 580.

Given the state of Georgia law at the time Kraus represented Petitioner, there is a reasonable argument that Kraus was not deficient, in *Strickland* terms, for not claiming that Petitioner's guilty plea was invalid because he was not informed of

---

[3] There was no *Boykin* issue in *Britt* as the defendant there was advised of all three *Boykin* rights before he pled guilty.  *Britt*, 556 S.E.2d at 436.  The issue was whether the defendant's constitutional rights were violated when he was not informed of the rights listed in Georgia's Uniform Superior Court Rule 33.8.  *Id.*

31

one of the rights mentioned in *Boykin*.  The state habeas court's conclusion that Kraus was not deficient was a reasonable application of *Strickland*.

The state habeas court's conclusion that Petitioner did not show that he was prejudiced by Kraus' failure to raise the *Boykin* claim also was reasonable.  The Georgia Supreme Court's statements in Petitioner's case establishes that.  The Georgia Supreme Court reviewed the record of Petitioner's plea hearing, which shows that Petitioner was not advised of the privilege against self-incrimination, and nevertheless concluded that "the record shows that [Petitioner] was correctly informed about the constitutional rights he was waiving and . . . made a knowing, voluntary, and intelligent plea of guilty."  *Johnson*, 570 S.E.2d at 291.  If the Georgia Supreme Court thought at that time – September 2002 – that the failure to advise a defendant of one of the rights mentioned in *Boykin* automatically invalidates the plea – which is the court's current position – it could not have reached that conclusion.

For those reasons, Petitioner has not overcome the double deference applicable to his claim that Kraus rendered ineffective assistance.  He thus is not entitled to relief on ground three of his petition.

**IV.    Certificate of Appealability**

A habeas petitioner may not appeal the dismissal of his § 2254 petition "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).  Rule 11 of the Rules Governing § 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (quotation marks omitted).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was

33

correct in its procedural ruling." *Jimenez v. Quarterman*, 129 S. Ct. 681, 684 n.3 (2009) (quotation marks omitted).

As shown in Part III, above, the resolution of Petitioner's claims is not reasonably debatable.  Petitioner has not made a substantial showing of the denial of a constitutional right.  A COA is not warranted.

## V.    Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the petition for a writ of habeas corpus [1] and a certificate of appealability be **DENIED** and that this action be **DISMISSED**.

**SO RECOMMENDED** this 1st day of April, 2014.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

34